UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

BIENVENIDO CASTILLO,

Defendant.

Case No. 1:90-cr-00469 (JLR)

**OPINION AND ORDER**

---

JENNIFER L. ROCHON, United States District Judge:

Before the Court is a motion for a reduced sentence pursuant to 18 U.S.C. § 3582(c) filed by Defendant Bienvenido Castillo ("Castillo" or "Defendant").[1]  After counsel was appointed to assist Castillo with his initial *pro se* submission, Castillo filed his full motion for a sentencing reduction on April 3, 2025.  Dkt. 45 ("Mot." or "Motion").  The Government responded to Castillo's Motion on July 11, 2025.  Dkt. 49 ("Opp."), and on July 18, 2025, Castillo filed a reply brief.  Dkt. 50 ("Reply").  For the following reasons, the Court DENIES the motion for a sentencing reduction.

## BACKGROUND

On May 8, 1991, a jury found Castillo and his co-conspirators, Manual Ogando ("Manual") and Anastasio Ogando ("Anastasio"), guilty of (i) conspiracy to distribute and possess with intent to distribute over five kilograms of cocaine in violation of 21 U.S.C. § 846 and (ii) carrying firearms during drug trafficking crimes in violation of 18 U.S.C. § 924(c). *United States v. Ogando*, 968 F.2d 146, 146 (2d Cir. 1992).  This conviction stemmed from

---

[1] Castillo initially submitted a letter *pro se* on September 13, 2024 to the Director of the Bureau of Prisons seeking sentencing relief under *Sester v. United States*, 566 U.S. 231 (2012), which was filed with this Court on October 1, 2024.  Dkt. 36.  The Court subsequently appointed counsel, Dkt. 38, and in Castillo's April 3, 2025 submission in support of his motion, Castillo acknowledged that *Sester* is not directly applicable to his requested relief and instead sought a sentencing reduction under 18 U.S.C. § 3582(c), Dkt. 45 at 3 n.4, 4.

Castillo's involvement in a cocaine trafficking business in the late 1980s. *Id.* at 147. On October 11, 1988, two undercover officers purchased cocaine from this cocaine business in an apartment in upper Manhattan and then returned a week later to purchase more. *Id.* Castillo, who had at that point worked with the Ogandos for at least two months, weighed the cocaine and then ordered the officers to sample it. *Id.* They declined, prompting suspicion that they were police officers. *Id.* In response, Castillo held a gun to the head of one of the police officers while they were searched. *Id.* When a service gun was found, a struggle ensued, and Castillo shot one of the officers twice from close range, killing him. *Id.*

Castillo fled to Puerto Rico, where he was arrested and extradited to New York for trial. *Id.* On December 1, 1989, a New York state court convicted Castillo for the officer's murder and other related charges. *Id.* He was sentenced to 656 months to life, which was reduced to 524 months to life after an appeal. Opp. at 2; *see generally* Dkts. 45-1 ("Ex. A"), 45-2 ("Ex. B"). Castillo was then indicted in the Southern District of New York and found guilty of conspiring to distribute and possess over five kilograms of cocaine and carrying a firearm during a drug trafficking crime. *Ogando*, 968 F.2d at 147-48.

Then-District Judge Leval sentenced Castillo on October 28, 1991. Dkt. 49-1 ("Judgment"). Judge Leval calculated the applicable sentencing guidelines range of 188 to 235 months in prison for the cocaine conspiracy charge, based on an Offense Level of 36 and a Criminal History category of I, plus an additional consecutive 60 months in prison on the weapons charge. *Id.* at 5.[2] Judge Leval departed upward, adding 144 months to the guidelines range under U.S.S.G. § 5K2.1, because Castillo had killed a police officer during the charged

---

[2] The 1990 Sentencing Guidelines govern Castillo's sentence because he was sentenced on October 28, 1991, four days shy of the November 1, 1991 effective date of the 1991 Sentencing Guidelines. Mot. at 7 n.5.

conspiracy. *See id.* In the Judgment, Judge Leval provided his justification for upwardly departing from the guidelines range, stating:

> Defendant intentionally murdered an undercover police officer who was making an investigative buy. A drug dealer colleague of the [defendant] was also killed. Defendant regularly conducted drug dealing activity in an apartment with loaded firearms handy, in circumstances that made death/serious injury likely in event of police activity. Defendant immediately pulled out [a] loaded gun on suspicion of police presence and killed [an] officer on confirmation that [the] buyer was [a] policeman.

*Id.* Judge Leval then imposed a sentence of 379 months (the top of the range of 235 months plus a 144-month upward departure) on the narcotics conspiracy, with 144 months to run concurrently with the state sentence. *Id.* at 2. In addition, he imposed a 60-month sentence on the weapons charge to run consecutively to the prison sentence for the narcotics conspiracy, as required by statute. *Id.*

Given that 144 months of Castillo's sentence was to run concurrently, the remaining 295 months on his federal charges will commence after his state sentence concludes. As of the date of the Motion, he has served approximately 35 years in prison on his state charges and becomes eligible for parole in September 2032. Mot. at 4; Ex. A at 1. If released, Castillo will then begin serving the remaining 295 months of his federal sentence, which would mean that, absent a sentencing reduction, he would be released from federal custody in approximately 2057 when he is about 95 years old. Mot. at 4. Upon release, Castillo may also be deported to the Dominican Republic, where he is a citizen. *Id.*; Dkt. 45-5 ("Ex. E").

## LEGAL STANDARD

Castillo seeks a sentencing reduction under 18 U.S.C. § 3582(c)(1)(A), which allows the Court to reduce a sentence based on "extraordinary and compelling reasons," and 18 U.S.C. § 3582(c)(2), which permits a reduction due to a subsequent retroactive amendment to the relevant Sentencing Guidelines. *See generally* Motion.

The first ground for relief is often referred to as a request for "compassionate release," even though the Court need not grant release and may instead order a sentencing reduction. *United States v. Booker*, 976 F.3d 228, 237 (2d Cir. 2020) ("It bears remembering that compassionate release is a misnomer. [Section 3582(c)(1)(A)] in fact speaks of sentence reductions."). There are several requirements that must be satisfied before the Court may grant relief under Section 3582(c)(1)(A). As a threshold matter, "absent waiver or forfeiture by the government, an inmate must exhaust administrative remedies by requesting such relief from prison authorities." *United States v. Keitt*, 21 F.4th 67, 71 (2d Cir. 2021). The Government concedes that Castillo has satisfied this requirement. Opp. at 4. Next, the defendant must demonstrate that his circumstances are "extraordinary and compelling" such that when the Court considers, as it must, the relevant sentencing factors under 18 U.S.C. § 3553(a), a sentencing reduction is warranted "and would not simply constitute second-guessing of the sentence previously imposed." *Keitt*, 21 F.4th at 71. Finally, any reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Following the Sentencing Guidelines' November 2023 amendment, fulfilling this requirement requires that any motion for a sentencing reduction, including defendant-filed motions, be consistent with U.S.S.G. § 1B1.13. *See United States v. Feliz*, No. 16-cr-00809 (VM), 2023 WL 8275897, at *3-4 (S.D.N.Y. Nov. 30, 2023) (holding that the amendments to Policy Statement § 1B1.13 harmonized the statement with the First Step Act such that the statement is now applicable to compassionate release motions brought by defendants); *United States v. Corbett*, No. 10-cr-00184 (PAE), 2023 WL 8073638, at *3 (S.D.N.Y. Nov. 21, 2023) (finding that after the November 1, 2023 amendments, "[t]he amended guidance from the Commission as to what constitutes extraordinary and compelling reasons now controls the analysis of a compassionate release petition, however initiated").

As for Castillo's second potential ground for sentencing relief, Section 3582(c)(2) authorizes a reduction in the term of imprisonment if the defendant was sentenced to "a term of imprisonment based on a sentencing range that that has subsequently been lowered by the Sentencing Commission[.]"  18 U.S.C. § 3582(c)(2).  The Court must first determine the scope of the reduction authorized by U.S.S.G. § 1B1.10 and then decide whether the authorized reduction is warranted under the applicable factors set forth in Section 3553(a).  *See Dillon v. United States*, 560 U.S. 817, 826 (2010) (holding that in determining whether a sentence may be reduced based on a retroactive sentencing guideline amendment under 18 U.S.C. § 3582(c)(2), "[a] court must first determine that a reduction is consistent with § 1B1.10 before it may consider whether the authorized reduction is warranted, either in whole or in part, according to the factors set forth in § 3553(a)").

## DISCUSSION

### I.   Compassionate Release Relief Pursuant to Section 3582(c)(1)(A)

In support of his request for compassionate release relief, Castillo relies solely on U.S.S.G. § 1B1.13(b)(2) and contends that his sentence should be reduced due to "extraordinary and compelling reasons."  Mot. at 7-8 (alteration adopted).  Section 1B1.13(b)(2) counsels that "[e]xtraordinary and compelling reasons" exist where a defendant (1) "is at least 65 years old;" (2) "is experiencing a serious deterioration in physical or mental health because of the aging process;" and (3) "has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less."  U.S.S.G. § 1B1.13(b)(2).  The Government does not dispute that Castillo has served the requisite 10 years, given that he served the concurrent 144-month sentence imposed by Judge Leval during his time in state custody.  Opp. at 5.  However, the Government notes that Castillo has not yet reached the age of 65 and is not experiencing a serious deterioration of his physical health.  *Id.* at 5-6.  The Government further argues that a sentence reduction would be

inconsistent with the Section 3553(a) factors. *Id.* at 7-9. The Court agrees with the Government that a sentencing reduction on this basis is not warranted.

Even if the Court were to preemptively consider this basis for a sentencing reduction before Castillo is 65 years old, Castillo has failed to demonstrate that he is suffering from a serious deterioration in physical health. Castillo asserts that he suffers from recurrent hernias for which he received surgery in March 2022 and March 2023, and that untreated hernias could "substantially increase the risk of major morbidities, causing significant quality of life concerns." Mot. at 8. But while Castillo is correct that he does not need to show that he qualifies for the "terminal illness" guideline, *id.* (citing U.S.S.G. § 1B1.13(b)(1)(A)), his current medical condition of experiencing hernias that are treatable, and in fact have been treated, does not rise to the level of a serious deterioration in physical health. There is no indication that recurrent hernias that are then treated impair Castillo's basic human functions. Several courts that have evaluated similar applications from defendants with hernias have found that hernias do not constitute a serious deterioration in physical health, even when combined with other medical conditions, which Castillo does not have. *See, e.g.*, *United States v. Wise*, No. 12-cr-00111-EMC-1, 2024 WL 170765, at *1 (N.D. Cal. Jan. 16, 2024) (finding that defendant, who had an inguinal hernia with surgical referral, along with an enlarged prostate, treated hypertension, GERD, hip and knee osteoarthritis, and glaucoma, had not demonstrated serious deterioration in physical health based on age); *United States v. Winchester*, No. 18-290-001, 2024 WL 3378198, at *3-4 (W.D. Pa. July 11, 2024) (finding same where defendant suffered from an inguinal hernia that may need surgery as well as diabetes and a benign mass in his neck); *United States v. Morgan*, No. 21-cr-1794 (WQH), 2025 WL 2173964, at *3-4 (S.D. Cal. July 31, 2025) (finding same where defendant suffered from a hernia that had worsened over time, as well as COPD, congestive heart failure, and high blood pressure). Indeed, courts in this District have found that

medical conditions that are more serious than those experienced by Castillo do not constitute serious deterioration of physical health. *See, e.g.*, *United States v. Borelli*, No. 84-cr-00063 (LAP), 2021 WL 2228075, at *2-3 (S.D.N.Y. June 2, 2021) (finding no serious deterioration in physical health where defendant suffered from diabetes, hypertension, heart disease, and cataracts); *United States v. Sabir*, 481 F. Supp. 3d 270, 275 (S.D.N.Y. 2020) (holding that defendant with asthma, prostate cancer, and prediabetes had not established "extraordinary and compelling circumstances").

Castillo's reliance on *United States v. Rodriguez*, 492 F. Supp. 3d 306 (S.D.N.Y. 2020) is unpersuasive. Mot. at 9. In *Rodriguez*, the court held that the defendant had shown extraordinary and compelling reasons for a sentence reduction in part because the defendant's underlying health conditions of obesity and Type II diabetes put him at high risk of severe illness from COVID-19 during the height of the pandemic, and the pandemic lockdowns and restrictions made his incarceration harsher and more punitive than it otherwise would have been. *Rodriguez*, 492 F. Supp. at 310-11. Importantly, the court also found it "highly relevant" in assessing the extraordinary and compelling circumstances that the evidence of defendant's rehabilitation was "nothing short of remarkable" with letters submitted from 27 members *of the prison staff* supporting a sentencing reduction. *Id.* at 311-12. Such circumstances are not present here.

Castillo, therefore, has not shown, at this time, that there are extraordinary and compelling reasons for a sentence reduction under U.S.S.G. § 1B1.13(b)(2) because he is not currently suffering from a serious deterioration in physical or mental health because of the aging process. And even if the Court were to find that his health conditions were significantly serious, a sentencing reduction at this time would not be warranted when his current circumstances are weighed in light of the sentencing factors, the less than compelling rehabilitation evidence

presented, and Castillo's extensive disciplinary record while incarcerated, as set forth below. *See infra* Part II.

II.    **Sentencing Reduction Due to Retroactively Applicable Guidelines Under Section 3582(c)(2)**

As for Castillo's second basis for relief, the Government does not dispute that Castillo qualifies for a reduction in his Guidelines range pursuant to the "Drug Minus Two" Guidelines Amendment 782, which was made retroactive by Amendment 788. Mot. at 6-7; Opp. at 10 (citing to U.S.S.G., App. C, amends. 782, 788 (effective Nov. 1, 2014)). Instead, the Government argues that a sentencing reduction at this time would not be consistent with the Section 3553(a) factors. The Court agrees.

Based on the 1990 Sentencing Guidelines table in effect at the date of his sentencing, Castillo qualifies for a two-level reduction in his base offense level from 36 to 34 on the narcotics trafficking charge. Opp. at 10. He further qualifies for a decrease of his guidelines range from 188–235 months to 151–188 months. *Id.* The mandatory consecutive 60-month sentence on his firearm charge remains the same. *Id.*

Notwithstanding this, and even if Castillo did demonstrate that he met the requirements of U.S.S.G. § 1B1.13(b)(2), the Court must also determine whether a sentencing reduction would be consistent with the Section 3553(a) factors. *See* 18 U.S.C. § 3582(c)(1)(A) (requiring consideration of the Section 3553(a) in determining whether sentencing reduction is warranted for purposes of compassionate release relief); 18 U.S.C. § 3582(c)(2) (requiring court to consider Section 3553(a) factors in determining request for sentencing reduction based on a sentencing range that has been subsequently lowered by the Sentencing Commission).

Having evaluated the Section 3553(a) factors, the Court finds that a sentencing reduction is not consistent with the seriousness of Castillo's offense. Castillo's crime is one of the more

serious offenses and accordingly deserves a lengthy sentence: he conspired to traffic more than five kilograms of cocaine, possessed a loaded gun in connection with trafficking said cocaine, and shot and killed an undercover police officer at close range once the officer's identity was revealed. *Ogando*, 968 F.2d at 147. Even if Castillo qualifies for a two-level reduction of his guidelines range, Judge Leval chose to upwardly depart from the range because Castillo "intentionally murdered an undercover police officer." Judgment at 5. Given this conduct, a sentencing reduction would not promote respect for the law, afford appropriate deterrence, or provide a just punishment. Even if threats to public safety may be lessened if Castillo were deported on release to his home country in the Dominican Republic where his family lives, Mot. at 10, the countervailing considerations of providing just punishment for a serious offense of engaging in a narcotics conspiracy with a loaded firearm, which resulted in the intentional murder of a police officer, outweighs that consideration.

In arguing that a sentencing reduction here would not create unwarranted sentencing disparities, Castillo first points to the sentencing reduction to 216 months granted to a defendant convicted of a drug-related murder in *United States v. Martinez*, No. 06-cr-00987 (DC), 2024 WL 4188311 (S.D.N.Y. Sept. 13, 2024), where the court noted that the average and median sentences for murder convictions in 2023 were 285 and 276 months, respectively. Mot. at 11; *see also Martinez*, 2024 WL 4188311, at *9 (citing U.S. Sentencing Comm'n, Fiscal Year 2023 Statistical Information Packet: Southern District of New York, at Table 7 (2023)). Not only is Castillo's criminal offense of killing a police officer more serious than murders that may form the basis for these general average and median murder statistics, but the circumstances in *Martinez* are a far cry from those present here. In *Martinez*, while the murder and narcotics offenses were undoubtedly serious, the defendant (1) had stage four terminal cancer and was confined to prison during the COVID-19 pandemic, which placed him at increased risk; (2) had

9

extenuating family circumstances; (3) demonstrated an "exemplary record of rehabilitation;" and (4) "ha[d] not incurred a single disciplinary infraction within the last fourteen years," with the only two earlier infractions being nonviolent in nature. *Martinez*, 2024 WL 4188311, at *8, *10-11. Castillo's recurrent hernias are not akin to the terminal cancer faced by the defendant in *Martinez*; his completion of three educational courses and two anger management courses many years ago coupled with increased dedication to his faith, Mot. at 10-11; Dkt. 45-9 ("Ex. I"), are not out of the ordinary rehabilitation efforts; and his disciplinary record while incarcerated is lengthy and extensive, Opp. at 3. Most troubling, while incarcerated, Castillo has had 15 "level three" offenses (the highest level in the New York State system) that have resulted in sanctions of lengthy stays in the Special Housing Unit or confinement to his cell or dormitory. Opp. at 8-9; Dkt. 49-2. Though his last offense was in 2017, many of his offenses involved violent conduct, fighting, weapons, and assault. Opp. at 8-9.

Castillo's further reliance on the average and median sentences of 113 to 378 months and 60 to 252 months respectively under 18 U.S.C. § 1114, Mot. at 12, is similarly unpersuasive given that this statute punishes not only murder of federal officers and employees but also attempted murder and manslaughter, *see* 18 U.S.C. § 1114.

Castillo next points to his co-defendant, Manuel Ogando, who was sentenced to 369 months in prison on his narcotics charges to be followed by 60 months in prison for the firearm conviction. Mot. at 7. Castillo notes that Ogando was later provided a sentencing reduction to 297 months followed by 60 months on the firearm conviction by Judge Sullivan based on the retroactive application of the "Drugs Minus Two" guidelines amendments. *Id.*; *see also* Dkt. 32. However, Manuel's circumstances differed from those of Castillo in several significant respects. First, the Government did not object to a sentencing reduction for Manuel. Dkt. 32 at 2. Second, Manuel (unlike Castillo) "ha[d] not received [any] disciplinary sanctions for violence or

10

assaultive behavior while incarcerated." *Id.*  Lastly, Manuel had more significant rehabilitation efforts than Castillo in that he had completed his GED, a three-year degree in psychology, and a four-year degree in architecture.  *Id.*  Given these differences, the Court finds instead that Judge Marrero's rejection of a sentencing reduction for Castillo's other co-defendant, Anastasio Ogando, is a more apt comparator.  Judge Leval sentenced Anastasio to 363 months followed by 60 months for his firearm conviction.  Dkt. 23 at 1.  Judge Marrero later found that even though Anastasio was eligible for the sentencing reduction under the retroactive guidelines amendments, a reduction was not warranted after considering the Section 3553(a) factors.  *Id.* at 8.  In so finding, Judge Marrero relied on several facts: (1) Anastasio used a firearm during the offense; (2) he received a role enhancement because he was an organizer and manager of a drug operation; (3) Judge Leval departed upwardly from the guidelines range because there were two deaths, including that of an undercover police officer; and (4) Anastasio had a criminal history that included violent and assaultive behavior.  *Id.* at 7.  Judge Marrero also cited Anastasio's disciplinary sanctions while incarcerated for violence and assaultive behavior.  *Id.* at 7-8.  Many of those same factors are present for Castillo.

Judge Leval carefully and thoughtfully imposed a significant sentence here, upwardly departing from the guidelines range because Castillo murdered an undercover police officer.  He further ordered that the majority of Castillo's federal sentence run consecutively with the lengthy state sentence that had already been imposed.  Even though Castillo is eligible for a two-level reduction in his guidelines range, a sentencing reduction is not warranted after considering the various Section 3553(a) factors, the less than compelling rehabilitation evidence presented, and Castillo's extensive disciplinary record while incarcerated.

## CONCLUSION

For the foregoing reasons, Defendant's motion for a sentence reduction pursuant to 18

U.S.C. § 3582(c) is DENIED.  CJA panel counsel is relieved of further representation of

Defendant in this matter.

Dated:  December 12, 2025
        New York, New York

SO ORDERED.

_____
JENNIFER L. ROCHON
United States District Judge